Matter of the Settlement of JOHN W. KELLY, a Poor Person, Between the Town of Camillus, Appellant, and THE TOWN OF GEDDES, Respondent.

(County Court, Onondaga County, March, 1905.)

Poor Law — Settlement of poor person on removal to another town —
Contest between towns — Liability for support of children in asylum
— What not "relief."

In September, 1902, a man moved his wife and infant children from a town where he had resided for six years to another town where he remained for over a year without being supported or relieved at the expense of the latter town. *Held*, that he had obtained a settlement therein within the meaning of the Poor Law, and a simple notice (Poor Law, § 42, subd. 4) mailed in November, 1902, by the overseer of the poor of said town to the overseer of the poor of the town from which the poor person had removed, which stated that relief had been given, when in fact it neither had been nor was thereafter rendered, nor the failure of the latter overseer to serve a notice of contest upon the other overseer, prevented a settlement of the poor person in the town to which he had removed nor prevented the other town from claiming that such

settlement had been in fact obtained. So held in a proceeding to determine which of the two towns was liable for the support of such of said children as were taken to an orphan asylum.

The fact that the day before the above-mentioned notice was mailed the acting overseer of the poor gave the wife a letter to her husband's employer by means of which she obtained her husband's wages, was not "relief" within the meaning of the Poor Law, upon giving of which a right therefor arose permitting a recovery in dollars and cents.

APPEAL from a decision of the superintendent of the poor of the county of Onondaga, in which he determined that the legal settlement of the poor person was in the town of Camillus and not in the town of Geddes in said county.

Thomson, Woods & Smith, for appellant, town of Camillus.

Stilwell, Kelly & Viall (David Costello, of counsel), for respondent, town of Geddes.

Ross, J. For six years prior to August, 1902, John W. Kelly, a person of full age, resided with his wife and infant children in the town of Camillus, and supported himself and family without aid from the public. In September, 1902, Kelly moved with his family from the town of Camillus to the town of Geddes.

In October, 1902, Martin L. Whittig was overseer of the poor of the town of Geddes, and his wife, Margaret E. Whittig, kept her husband's books and made out orders and did any work connected with the office.

In October or November, 1902, the wife of John W. Kelly, above mentioned, came to the office of the overseer of the poor of the town of Geddes and, in the absence of Mr. Whittig, stated to Mrs. Whittig that her husband had gone away and left them without anything to eat, that he was on a drunk, and that they were very destitute; that he had been gone two or three days; that her husband had a week's pay coming from the corporation for which he worked, and that its treasurer refused to pay without an order from some one in authority. Mrs. Whittig thereupon wrote a letter to the

County Court, Onondaga County, March, 1905.     [Vol. 46.

treasurer of the corporation for which Kelly had worked, and said to Mrs. Kelly if she did not get her husband's wages to come back and " that the overseer would give her an order for something." She didn't come back. Mrs. Kelly obtained the amount of her husband's wages. On the day following the visit of Mrs. Kelly, Mrs. Whittig, at the request of her husband, made out and mailed the following notice to Mr. A. H. Butterfield, the overseer of the poor of the town of Camillus:

" SOLVAY, N. Y., ———, 189 .

*" To the Overseer of the Poor for the Town of Camillus:*

" You are hereby notified that William Kelly, a pauper, who has gained settlement in your town, to which he belongs, is in the town of Geddes, and is supported at the expense of said town, for which the undersigned is overseer. You are, therefore, required to provide for the relief and support of the said pauper.

" MARTIN L. WHITTIG,<br>" Overseer of the Poor."

A few days later Mr. Butterfield had a conversation with the overseer of the poor of the town of Geddes, and stated " that the Kelly people belonged to his town, that Mr. Whittig should use his own judgment in how he acted with them," but he swears that he did not learn until a year afterwards that Kelly was not being supported by the town of Geddes.

On October 12, 1903, William P. Kanar, the town physician of the town of Geddes, who was paid a salary by said town, made a professional call at the request of the overseer of the poor of the town of Geddes, upon one of the Kelly children, who was sick, and in January, 1904, in response to a similar request of the overseer of the poor, made several calls upon members of the Kelly family who were sick at the time.

On October 24, 1903, the overseer of the poor of the town of Geddes, mailed to Mr. Butterfield a notice similar to the former notice. Mr. Butterfield did not reply in writing to the two notices mailed to him relative to the Kelly case, and did not give notice of an intention to contest the claim of the

town of Geddes relative to the settlement of Kelly.    The Kelly family were in a destitute condition in October, 1902, October, 1903, and also in January, 1904.  *No actual assistance was given to Kelly or his family by the town of Geddes except as aforesaid.*

In January, 1904, Mr. Stephen D. House, who was then overseer of the poor of the town of Camillus, received a similar notice to those heretofore mentioned from the overseer of the poor of the town of Geddes.   Mr. House forthwith served a written notice of contest to appear before the superintendent of the poor of the county of Onondaga, and pursuant to such notice a contest was had, and from the decision of the superintendent of the poor, who determined that the settlement of Kelly was in the town of Camillus, and that said town is liable for his support, and from such decision this appeal is taken. ·

Subsequently some of the Kelly children were taken to an orphan asylum, and the practical importance of this proceeding to the parties is to determine which of the aforesaid towns is liable for their support.

This case must be determined by what occurred in November, 1902.   Section 40 of the Poor Law provides:  " Every person of full age, who shall be a resident and inhabitant of any town or city for one year,  *   *   *   shall be deemed settled in such town or city, and shall so remain until he shall have gained a like settlement in some other town or city in this State."

Section 41 provides that " No residence of any such poor person   *   *   *   while such person, or any member of his or her family is supported or relieved at the expense of.any other town,   *   *   *   shall operate to give such poor person a settlement in the town where such actual residence may be."   People ex rel. French v. Lyke, 159 N. Y. 149.

So that on October 2, 1903, Kelly had obtained a settlement in the town of Geddes unless, he had during that time been supported or relieved by that town or unless the failure of the overseer of the poor of the town of Camillus to serve a notice of contest upon the overseer of the poor of the town of Geddes prevented a settlement, or prevents the town of

County Court, Onondaga County, March, 1905.     [Vol. 46.

Camillus from making a claim that such settlement had been in fact obtained.

These exceptions will be considered. The only transaction prior to October 2, 1903, upon which the town of Geddes can base a claim of having supported or relieved Kelly was the transaction in November, 1902, when the acting overseer gave Mrs. Kelly a letter to her husband's employer, by means of which she obtained her husband's wages. Such action was in a general way relief, as it would have been relief if the overseer had found Mrs. Kelly wet or cold and had invited her to seek warmth and shelter by his fireside, but the letter written to Kelly's employer was not relief in the sense meant in the Poor Law, upon giving of which a right of action therefor arises and a recovery is permitted in dollars and cents.

Suppose that instead of a small sum due Kelly for wages the corporation owed him a thousand dollars and had required Mrs. Kelly to obtain a letter from the overseer of the poor of the town of Geddes before paying such legal obligation, would it be reasonable or possible to conclude that such a letter would be extending relief within the meaning of the Poor Law.

Kelly, therefore, having remained in the town of Geddes for over one year without being supported or relieved at the expense of that town, obtained a settlement therein, unless the notice mailed to the overseer of the poor of the town of Camillus in November, 1902, prevents the last-mentioned town from making such claim.

Section 42 of the Poor Law, subdivision 4, provides as follows: " If such poor person be in a county where the respective towns are liable to support their poor, and has gained a settlement in some town of the same county other than that in which he may then be, he shall be supported at the expense of the town or city where he may be, and the overseers shall, within ten days after the application for relief, give notice in writing to an overseer of the town to which he shall belong, requiring him to provide for the support and relief of such poor person."

Section 43 provides: " If, within ten days after the service of such notice, the overseer to whom the same was di-

rected, shall not proceed to contest the allegation of the
settlement of such poor person, by giving the notice herein-
after directed, he or his successors, and the town which he or
they represent, shall be precluded from contesting or denying
such settlement."

Then follows a provision relative to giving notice of con-
test and the procedure to determine the questions arising
thereon.

It is a question whether Mrs. Kelly, within the meaning
of the statute, applied for relief in November, 1902, but
assuming that she did, unless such application was followed
within a reasonable time with support, a notice simply based
upon such application was futile.

The primary object of the statute, section 42, subdivision 4,
is to enable the overseer of the poor of the town where the
poor person is, to immediately relieve his necessities, without
making the town so assisting liable by reason of such action.
The provision relative to notice which may be given upon
application for relief and not later than ten days thereafter
is a detail in the procedure to determine the liability of the
respective towns.   It provides, on the one hand, means for
the assisting town to protect itself and at the same time pro-
tects the town where the poor person had a settlement from
stale or accumulated claims.   The manner of notice is one of
procedure, the cause of action, the basis of contest, the neces-
sity for notice, is the fact of actual relief furnished or to be
furnished.   If no such relief is furnished, the person is not
a poor person and notice is useless.   The time for serving the
notice in question is measured by the application; if based
upon the time of giving relief, the assisting town might fur-
nish relief to the poor person for months and years and then
serve a notice, so that the necessity for fixing the time with
reference to the application is apparent.

The practice of giving relief to a new comer and possible
poor person and serving notice upon the town of his former
residence to prevent a settlement in the town of his residence
is subject to abuses enough but it has never before been ex-
tended to a simple notice which stated that relief had been
given when in fact it neither had been nor thereafter was

rendered. In other words, an intelligent construction of this statute requires that it should be construed together with reference to its apparent meaning, and the evil sought to be prevented and the rights to be protected rather than to put a strained interpretation upon a detached sentence.

It is unnecessary to pass upon the other questions, many of which were presented.

For the reasons herein stated the decision of the superintendent of the poor, from which the appeal herein was taken, is, therefore, reversed, with costs.

Decision of superintendent of the poor reversed, with costs.